# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REBECCA M. MURPHY, an individual, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 10-CV-694-GKF-TLW ) |
| SAMSON RESOURCES COMPANY, | ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the undersigned United States Magistrate Judge for a report and recommendation is the Motion for Attorney Fees and Brief in Support filed by defendant Samson Resources Company ("Samson"). (Dkt. ## 79, 80). Plaintiff filed a response, and Samson filed a reply. (Dkt. ## 87, 92). The undersigned held a hearing on June 12, 2012. (Dkt. # 95). Through its motion, defendant seeks $50,566.00 in attorney fees and $26,716.00 in costs (associated with expert witness fees) for the time period after it served its motion for summary judgment. (Dkt. # 79). Defendant also asks that it be allowed to supplement its motion to include attorney fees and costs for the entire litigation "[s]hould the Court be willing to entertain a fee award in excess" of the amount requested in its current motion. (Dkt. # 80). Defendant states that it has spent $368,992.01 defending this lawsuit. (Dkt. # 80 at 12).

## PROCEDURAL HISTORY

After defendant terminated plaintiff's employment, plaintiff sought a determination of discrimination from the Equal Employment Opportunity Commission ("EEOC"). (Dkt. # 69, Ex. 14). The EEOC found that defendant "unlawfully discriminated against [plaintiff] by rescinding her reasonable accommodation, discontinuing her [short-term disability] benefits, and terminating her employment in violation of the Americans with Disabilities Act of 1990, as

amended." Id. Plaintiff then filed her Complaint alleging discrimination under the Americans with Disabilities Act ("ADA"), retaliatory discharge under the Family Medical Leave Act ("FMLA"), violation of the Oklahoma Anti-Discrimination Act ("OADA"), breach of employment contract, and intentional infliction of emotional distress. (Dkt. # 2). Shortly after filing her Complaint, plaintiff filed a similar Petition in state court. (Dkt. # 23). Defendant removed the state court case, and the District Court consolidated it with the first one. (Dkt. ## 23, 26). At the completion of discovery, defendant filed a motion for summary judgment on all claims (dkt. ## 62, 63), which the District Court granted. (Dkt. ## 75, 76). Plaintiff has appealed that order to the Tenth Circuit. (Dkt. # 84).

## BACKGROUND[1]

Plaintiff was employed as an accounting assistant with defendant from September 2006 through November 20, 2008.[2] (Dkt. # 75 at 1-2, 15). The job description for an "accounting assistant" defined "regular attendance" as an essential function of the job, as accounting assistants work under close supervision and manage time-sensitive tasks. (Dkt. # 75 at 2-3). At the time she was hired, plaintiff disclosed a history of spontaneous migraines that forced her to miss work occasionally. (Dkt. # 75 at 2).

During her employment, plaintiff initially "made up" missed time by working nights and weekends when she felt well. (Dkt. # 75 at 3). By April 2008, however, plaintiff's PTO (personal time off) account held a negative balance of fourteen hours. Id. At that time, plaintiff received a warning about her unscheduled absences. Id. Plaintiff claimed that her manager, the person who supervised plaintiff's direct supervisor, learned about the "make up time" accommodation and

---

[1] Most of the facts recited in this section are taken from the District Court's findings of fact in its Opinion and Order granting summary judgment. (Dkt. # 75).

[2] Defendant sent plaintiff a letter on December 1, 2008, notifying her that her employment had been terminated effective November 20, 2008. (Dkt. # 75 at 15).

2

discontinued the practice, but emails from July – September 2008 reflect that plaintiff's supervisor and manager continued to allow plaintiff to "make up" missed work time. Id. at 3, 5.

Plaintiff also received criticism for significant mistakes in her work product. Id. at 4-6. Plaintiff initially testified in her deposition that these errors were insignificant and that she was never reprimanded. Id. at 4. Under questioning from defendant's counsel, plaintiff admitted that she was told about the errors and that some of the criticisms of her work were valid. (Dkt. # 75 at 4-5). Plaintiff also received a poor performance review in September 2008. Id. at 9-10. Plaintiff attributed her poor performance review to a lack of proper training, even though she acknowledged that she was required to update her own training manual. Id.

Plaintiff also testified in her deposition that due to the manager's position with respect to "make up time," she decided to apply for a different position within the company. Id. at 3, 5. Plaintiff testified that she did not know whether "make up time" would be permitted in the new position. Id. at 5. Plaintiff also was granted permission to make up five days' worth of missed time in the week before she completed an application for the internal position. Id.

Under defendant's company policy, an internal application required plaintiff's supervisor to sign a statement attesting to a good history of attendance and performance in the current position. Id. Plaintiff's supervisor spoke to the manager about the application. Id. at 6. Plaintiff's manager reviewed the application and opted not to submit plaintiff's application due to plaintiff's attendance and performance issues. Id. Accordingly, plaintiff was not able to apply for the internal position. Id.

Plaintiff argued in her response to defendant's motion for summary judgment that the decision not to allow her to apply for the internal decision was a discriminatory act based upon her use of FMLA time. (Dkt. # 69 at 7). The evidence, however, reflected that plaintiff had not

even requested FMLA paperwork at the time her supervisor and manager made this decision. (Dkt. # 75 at 5-6). The District Court concluded that it was impossible for plaintiff to establish a *prima facie* case for retaliation under the FMLA as a result of this failure. Id. at 6, 31.

In June 2008, plaintiff applied for and was approved for FMLA leave. Id. at 6. Plaintiff again testified in her deposition that she was not permitted to use "make up time" after receiving FMLA approval, but emails indicate that plaintiff was allowed to "make up time" through August 2008. (Dkt. # 75 at 5, 7). Plaintiff also admitted that no one discouraged her from using her FMLA leave, and emails showed that plaintiff's supervisor was supportive and wanted plaintiff to use the FMLA leave. Id. at 7. Plaintiff did complain that her supervisor required her to submit all work done on those days when plaintiff had to leave due to a migraine, leading her to believe that defendant was looking for mistakes to use against her due to her illness. Id. at 7-9. Plaintiff's supervisor told plaintiff that she was simply checking the work to ensure that plaintiff was given credit for work done during her work hours and was not penalized for her FMLA leave. Id. at 9.

During this time, plaintiff received additional criticism for her job performance in the form of a performance evaluation. Id. Her supervisor noted two particular errors. Id. Plaintiff objected, claiming that her manual provided incorrect information. Id. Plaintiff later admitted, however, that *she* was responsible for updating the manual. Id. at 9-10.

On the day plaintiff received her performance evaluation, she also requested short-term disability benefits ("STD"). Id. at 11. Plaintiff stated that she believed the stress of her supervisor's constant criticisms triggered migraines and also caused her to suffer from abdominal migraines, which plaintiff stated she had never experienced before working for defendant. Id. at 10-11. This testimony is at odds with plaintiff's previous deposition testimony that her migraines

4

were "spontaneous" and could be triggered by sounds or smells. Id. at 2. Plaintiff also claimed that two of her doctors "blamed" defendant for plaintiff's increased migraines. Id. at 10. Defendant disputes that claim and argues in its motion for attorney fees that the doctors did not identify job stress as the cause of plaintiff's migraines. (Dkt. # 80 at 2).

When plaintiff accepted STD benefits, she understood that her STD benefits ran concurrently with her FMLA leave. (Dkt. # 75 at 11). The STD policy also contained provisions requiring plaintiff to obtain physician certification of her need for STD. Id. at 11-13. These certifications required an explanation of the reason for continued leave and an approximate date of return to work. Plaintiff understood the terms of the STD policy. Id.

Plaintiff was initially approved for leave through September 26, 2008. Id. at 12. At the end of that period, plaintiff submitted a second certification letter extending her STD through mid-October. Id. at 13. On October 17, 2008, plaintiff submitted a third letter extending her STD from October 16, 2008 to November 15, 2008. Id. While plaintiff was still on STD, defendant sent her a letter on November 4, 2008, notifying her that her FMLA leave would expire on November 10, 2008. Id.

After receiving the FMLA letter, plaintiff obtained another certification letter from her doctor. Id. This letter stated that plaintiff could not return to work until November 20, 2008, and noted that plaintiff was seeking treatment from a new specialist around that time. Id. The letter indicated that plaintiff's leave might need to be extended again but was not specific. Id. Plaintiff claimed that she believed she was covered through her treatment with the new specialist and did not need an additional letter after November 20, 2008. Id. at 14, n.3. Her actions, however, indicated otherwise. Id. at 14. On November 21, 2008, plaintiff contacted her supervisor by email and advised her supervisor that she knew she needed a new letter and would get one at her

5

next appointment, scheduled for the following Wednesday. Id. at 14. Plaintiff apparently received a new letter at her next appointment, but she waited until late afternoon on December 1, 2008, to email her supervisor that she would have the letter delivered the next day. (Dkt. # 75 at 14-15). Other than the November 21, 2008, email and the December 1, 2008, email, plaintiff had no other contact with defendant for that eleven day period.[3] Id. at 15. Plaintiff emailed a copy of the doctor's letter to defendant on December 2, 2008. Id. at 16.

Upon receipt of plaintiff's certification letter on December 1, 2008, plaintiff's supervisor emailed plaintiff a letter (also dated December 1, 2008, and sent that day by Federal Express) terminating plaintiff's employment effective November 20, 2008, the day her previous certification letter expired. Id. at 15. Plaintiff argued that the STD policy provided that she would be placed on "no pay" status if she failed to return to work after her certification letter expired. Id. at 32-33. The policy also stated that failure to return to work would be considered abandonment and plaintiff would be terminated unless her application for long-term disability was pending. Id. at 11-13, 33-34. Plaintiff had not filed for long-term disability. Id. at 16.

**SUMMARY JUDGMENT ORDER AND OPINION**

The District Court rejected plaintiff's ADA claim, because plaintiff failed to prove a *prima facie* case: (1) that she could perform the essential functions of her job, with or without reasonable accommodation, and (2) that defendant discriminated against her because of her disability. Id. at 22, 24-29. The District Court concluded that plaintiff's only "evidence" of

---

[3] According to the District Court's opinion, Thanksgiving was the day after plaintiff's appointment.

6

discrimination was her opinion, which was insufficient.[4] Id. at 29. Because plaintiff's ADA claim failed, plaintiff's OADA claim also failed. Id. at 33.

The District Court did find that plaintiff had presented a *prima facie* case for retaliation under the FMLA. Id. at 30-31. However, the District Court found that defendant proved that it had two legitimate nondiscriminatory reasons for firing plaintiff: (1) unsatisfactory work performance occurring both before and after plaintiff sought FMLA leave; and (2) plaintiff's failure to abide by the STD policy and failure to communicate regarding the delay in sending an updated doctor's letter to extend her leave. Id. at 31. The District Court dismissed the FMLA retaliation claim when plaintiff failed to present any evidence of pretext in defendant's decision to terminate her. Id. at 32-33.

Plaintiff's breach of employment contract claim was based on the contract created between plaintiff and defendant through the STD policy. Plaintiff argued that defendant breached the STD agreement when it terminated her. Id. at 33. The District Court found that plaintiff's actions in failing to update her doctor's certification letter in a timely manner constituted abandonment of her employment under the STD for two reasons. Id. at 33-35. First, plaintiff's argument that her last letter continued her excused absence through the time of her treatment with a new specialist was inconsistent with the language of the STD policy. Id. at 34. Second, plaintiff's own actions indicated that she understood a timely updated letter was necessary. Id.

---

[4] The District Court's Order and Opinion also contains findings of fact regarding plaintiff's post-termination work history and after-acquired evidence of plaintiff's misrepresentations of her previous work history, including an affidavit from defendant's human resources director stating that plaintiff would have been terminated for falsifying her employment history. (Dkt. # 75 at 16-21). Those facts are not included here because the District Court did not rely on those facts in its analysis.

Accordingly, defendant did not violate the STD policy and was justified in terminating plaintiff's employment for her violation of it.

Finally, the District Court disposed of plaintiff's claim for intentional infliction of emotional distress. The District Court held that, as a matter of law, plaintiff failed to demonstrate that defendant's behavior was extreme or outrageous, as required by Oklahoma law. (Dkt. # 75 at 36). Additionally, because the District Court found that plaintiff's other claims failed to defeat defendant's summary judgment motion, plaintiff's termination, standing alone, was insufficient to serve as grounds for the tort claim. Id.

## MOTION FOR ATTORNEY FEES

Following the entry of the District Court's Opinion and Order granting summary judgment, defendant filed its motion for attorney fees and costs. (Dkt. # 79). Defendant seeks attorney fees in the amount of $50,566.00 and "nontaxable litigation expenses" of $26,716.00.[5] Id. at 2. Defendant contends that it is entitled to these costs and expenses because plaintiff's "action was frivolous, unreasonable, and Plaintiff and her counsel continued to assert claims against Samson long after it would have been reasonable and responsible to dismiss the claims." Id. Defendant seeks fees under three theories: (1) the fee-shifting provision of the ADA, 42 U.S.C.A. § 12205, as interpreted by the United States Supreme Court in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); (2) Okla. Stat. Ann. tit. 12, §936, which provides for recovery of attorney fees, in pertinent part, for "labor or services rendered;" and (3) 28 U.S.C.A.

---

[5] Although defendant claims that it has incurred $368.992.01 in fees and costs defending the case, defendant has limited its request only to those fees and costs incurred after it submitted its motion for summary judgment. (Dkt. # 80 at 13). Defendant argues that, at that point, plaintiff should have been aware that her claims were without merit. Id.

8

§1927, which allows for an award of attorney fees against an attorney or party "who so multiplies the proceeding in any case unreasonably and vexatiously." (Dkt. # 80).

**42 U.S.C.A. § 12205 – The ADA Attorney Fee Provision**

The ADA gives courts discretion to award attorney fees, including costs and litigation expenses,[6] to a prevailing party. See 42 U.S.C.A. § 12205. The ADA, like other civil rights statutes, favors granting attorney fees to a prevailing plaintiff as a means to encourage attorneys to police unlawful conduct. The Supreme Court reiterated this policy in Christiansburg Garment when it stated that "the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" Christiansburg Garment, 434 U.S. at 418. An award of attorney fees to a prevailing plaintiff is also an award of fees "against a violator of federal law." Id.

Congress's concern with discretionary award provisions for prevailing defendants in ADA cases, on the other hand, is only "to deter the bringing of lawsuits 'without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.'" Id. at 420 (citing "Senate floor discussions of the almost identical attorney's fee provision of Title II"). In light of these policy considerations, the Supreme Court concluded that attorney fees for prevailing defendants should only be awarded when the Court makes "a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421. When evaluating a motion for attorney fees from a prevailing defendant, "it is important that a district court resist the understandable temptation to engage in

---

[6] See generally Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I, 264 F.3d 999, 1011 n.4 (10th Cir. 2001) (citing "Congress's intent to include the costs of expert witnesses as part of 'litigation expenses'"); Jones v. Eagle-North Hills Shopping Centre, L.P., 478 F.Supp.2d 1321, 1329 (E.D. Okla. 2007) (citing Hall v. Claussen, 6 Fed.Appx. 655, 681 (10th Cir. 2001) (unpublished)).

*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." Id. at 421-22.

In considering a defendant's fee motion, the Tenth Circuit has held that the language of the dispositive order is useful in determining whether to award attorney fees. Sorbo v. United Parcel Svc., 432 F.3d 1169, 1180-81 (10th Cir. 2005). In Sorbo, the Tenth Circuit applied the Christiansburg Garment standard but declined to award fees to the prevailing defendant, finding that the defendant "has made no [Christianburg Garment] showing, nor did the district court characterize plaintiff's case in such terms when ruling on the merits." Id. at 1181 (emphasis added).

Defendant argues that an award of attorney fees is proper because this case is similar to another Tenth Circuit ADA case in which the Tenth Circuit upheld a partial attorney fee award for a prevailing plaintiff. See Twilley v. Integris Baptist Med. Ctr., Inc., 16 Fed.Appx. 923 (10th Cir. 2001) (unpublished).[7] Twilley brought suit against his employer for unlawful termination, alleging violations of the ADA and FMLA. See id. at 925. The district court granted summary judgment to his employer, finding that Twilley failed to establish "an inference that defendant terminated his employment based on his disability or in retaliation for his taking leave under FMLA." Id. The district court relied on the fact that plaintiff was terminated because he altered a medical release form in an attempt to falsely establish that he was out sick when he was actually on vacation. See id. The Tenth Circuit upheld the award of attorney fees, holding that "[t]he standard in Christiansburg Garment is met when a party utterly fails to produce *any* evidence in

---

[7] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

support of material issues necessary to withstand summary judgment." Id. at 926 (citations omitted) (emphasis in original). The Tenth Circuit found "that plaintiff failed to produce any evidence that defendant's proffered explanation for the termination was pretextual and we agree that his claims were based on mere speculation and conjecture," requiring the district court to grant summary judgment. Id. (citing Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) (addressing the role of conjecture in denying a motion for summary judgment). The opinion concluded that "plaintiff's claims were frivolous and unfounded" because "plaintiff continued to litigate after it became clear during discovery that his claims lacked evidentiary support." Id.

Here, the District Court found that plaintiff could not establish unlawful discrimination based on her disability under the ADA. (Dkt. # 75 at 29). The District Court also found that although plaintiff made out a *prima facie* case for FMLA retaliation, plaintiff could not show that defendant's reasons for terminating plaintiff were pretextual.[8] (Dkt. # 75 at 32). Defendant relies on the District Court's finding, in several instances throughout the summary judgment order, that plaintiff produced "no evidence" to support her claims other than her personal "opinion." (Dkt. # 75 at 25-26, 29, 32-33; Dkt. # 80 at 10-11).

Plaintiff, not surprisingly, disagrees; first relying on her lengthy response to defendant's summary judgment motion, including cases that she claims supported her position. In light of the language used by the District Court in its ruling, this argument fails. The District Court made

---

[8] Unlike the ADA, which provides for a discretionary award of attorney fees to a defendant who qualifies as a "prevailing party," the FMLA fee provision is limited to a mandatory award to a plaintiff who successfully obtains a judgment. See 29 U.S.C.A. §2617(3). Accordingly, any recovery for attorney fees or costs is limited to awards available under Fed. R. Civ. P. 54(d) or 28 U.S.C.A. § 1927. The analysis of the FMLA claim, however, is identical to that of plaintiff's ADA claim. See infra. at 14-16.

11

clear that the materials submitted by plaintiff in response to defendant's summary judgment motion did not rise to the level of "evidence" in support of plaintiff's claims. (Dkt. # 75 at 29, 32-33).

Plaintiff next argues that she pursued her claims, in part, because the EEOC issued a determination that "Defendant had rescinded its accommodation of short term disability and unlawfully terminated Plaintiff's employment in violation of the [ADA]." (Dkt. # 87 at 3, Ex. 1). This argument is more compelling and was not present in <u>Twilley</u>. The EEOC made its determination based upon plaintiff's December 1 submission of her doctor's certification, which the EEOC viewed as sufficiently timely for plaintiff to avoid termination under defendant's STD policy. In its ruling, the EEOC found that defendant "unlawfully discriminated against [plaintiff] by rescinding her reasonable accommodation, discontinuing her [short-term disability] benefits, and terminating her employment in violation of the Americans with Disabilities Act of 1990, as amended." (Dkt. # 69, Ex. 14). The EEOC's finding understandably provided plaintiff with at least some comfort that she had stated a cognizable claim. The District Court, however, was not bound by the EEOC determination and obviously reached a different conclusion, finding that plaintiff's December 1 submission was untimely and that summary judgment was, therefore, appropriate.[9] (Dkt. # 87, Ex. 1; Dkt. # 75 at 34).

Although the undersigned agrees with the District Court's conclusion, the undersigned cannot conclude that plaintiff should have declined to file her Complaint or that she should have

---

[9] Although the EEOC found that plaintiff "maintained reasonable contact with [defendant] during the accommodation period" and "provided [defendant] with the requested updated physician's certification," the District Court held that plaintiff's failure to communicate with defendant for eleven days, despite her knowledge that defendant anticipated receiving the certification letter within approximately five days, was sufficient for defendant to conclude that plaintiff had abandoned her employment. (Dkt. # 69, Ex. 14 and Dkt. # 75 at 31).

sought a dismissal upon reviewing defendant's summary judgment motion. In order to reach such a decision, plaintiff would necessarily have had to come to the conclusion that the EEOC's determination (and, thus, plaintiff's position) was frivolous and without foundation. Nothing in the summary judgment briefing or in the District Court's order definitively establishes that the EEOC's determination was based on false information or that the facts, as they related to plaintiff's December 1 submission and subsequent termination (based on the date of the submission), were substantially different than those considered by the EEOC. Even absent the EEOC determination, the undersigned finds that plaintiff's position that she provided the December 1 certification in a timely manner, although legally incorrect, was not frivolous. For these reasons, the undersigned concludes that under <u>Christiansburg Garment</u> and the Tenth Circuit precedent, plaintiff's claims were not, at any stage, frivolous or without foundation.

**Oklahoma Statutes Annotated, Title 12, § 936**

Defendant also argues that it is entitled to attorney fees under Title 12, section 936 of the Oklahoma Statutes. The statute provides that "[i]n any civil action to recover for labor or services rendered . . . unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set be the court, to be taxed and collected as costs." Plaintiff argues she was seeking recovery for breach of the STD policy and for the "damages which she would have earned" but for her unlawful termination, not for services rendered. (Dkt. # 87 at 4). As a result, plaintiff asserts that the statute does not apply here. <u>Id.</u> Defendant contends that plaintiff's prayer for relief included damages for benefits already earned, namely the remaining time left on her STD policy and the accompanying right to apply for long-term disability.

The Oklahoma Supreme Court strictly interprets Section 936. <u>See</u> <u>In re Burns</u>, 3 Fed.Appx. 689, 691 (10th Cir. 2001) (unpublished). The Tenth Circuit has reiterated the

Oklahoma Supreme Court's view, stating that the statute is "'limited to those situations where suit is brought for labor or services rendered.'" In re Meridian Reserve, Inc., 87 F.3d 406, 411 (10th Cir. 1996) (citing Russell v. Flanagan, 544 P.2d 510, 512 (Okla. 1975)). The question, then, is whether "the substantive litigation raised [other legal issues] rather than basic contract enforcement questions." In re Burns, 3 Fed.Appx at 691 (citing Grogan v. Garner, 498 U.S. 279, 289, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)) (holding that section 936 was not applicable to a bankruptcy case in which the debtors alleged that their student loans, which were subject to loan contracts, should be discharged). Although plaintiff included a breach of employment contract claim in her second complaint, this case is, at its core, an employment discrimination case, not a case seeking payment for services rendered. Accordingly, the undersigned recommends that the District Court deny defendant's request for attorney fees under the Oklahoma statute.[10]

**28 U.S.C. § 1927**

Finally, defendant argues that it is entitled to attorney fees as sanctions under 28 U.S.C.A. § 1927 for three reasons: (1) plaintiff multiplied the litigation by filing a state court action five months after filing the Complaint in federal court; (2) plaintiff continued the litigation after completing her deposition despite the fact that her testimony rendered success on the merits impossible; and (3) plaintiff continued the litigation after receiving defendant's motion for summary judgment even though plaintiff should have known at that time that defendant would prevail. Plaintiff argues that the statute is intended to address situations in which a party delays and extends the litigation unreasonably and that her conduct in this action does not meet that standard. Plaintiff cites the timely manner in which the litigation progressed and her attorney's responsiveness to all motions. Further, plaintiff argues that as a sanctions statute, any award of

---

[10] The undersigned also notes that defendant did not request a specific amount in fees for work completed on the breach of contract claim.

14

attorney fees should be made to serve as a deterrent, not as reimbursement for a prevailing party. Finally, plaintiff argues that any award be reduced, given plaintiff's inability to pay.

Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927. Contrary to plaintiff's argument, deterrence is not the primary goal of the statute. The statute "indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders." Hamilton v. Boise Cascade Exp., 519 F.3d 1197, 1205 (10th Cir. 2008).

While the Tenth Circuit does not require a finding of bad faith, it does require the court to determine that the party/attorney's conduct, when viewed objectively, "manifests either intentional or reckless disregard of the attorney's duties to the court." Id. at 1202. The Tenth Circuit has interpreted Section 1927 much in the same way as it has the discretionary fee provisions of the ADA. In Steinert v. Winn Group, Inc., 440 F.3d 1214 (10th Cir. 2006), the Tenth Circuit permitted an award of attorney fees against the attorney for "multiplying" the litigation by continuing to litigate a case in the face of a motion to dismiss that established plaintiff's claims were baseless. See id. at 1224-25. Fees were permitted for work performed after the motion to dismiss, as it was at that point that the litigation "multiplied," as plaintiff should have known that the claims had no merit. See id.

As with the ADA analysis, the District Court's language in the summary judgment order is instructive. While the District Court found that plaintiff failed to present evidence, other than her own opinion, to counter defendant's evidence in the summary judgment motion, the District

Court did not find that plaintiff's claims were baseless. Importantly, the District Court based its decision, in part, on a finding that plaintiff's last certification letter was untimely, a finding that directly contradicts the EEOC's determination, upon which plaintiff relied in pursuing the litigation. In short, for the same reasons cited in the analysis of 42 U.S.C.A. § 12205, the undersigned recommends that the District Court deny defendant's motion for attorney fees.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that the District Court deny defendant's motion for attorney fees and costs. (Dkt. # 79).

## OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so by July 24, 2012. See 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. See Moore v. United States, 950 F.2d 656 (10th Cir.1991); and Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.1996).

SUBMITTED THIS 10th day of July, 2012.

T. Lane Wilson
United States Magistrate Judge